May it please the Court, this case concerns a finding that the appellant can perform her past relevant work at Step 4. Specifically, it concerns whether the ALJ had substantial evidence that she could perform her past relevant work as either actually or generally performed as of the date last ensured, which, for clarity, was at the end of December 2016. The job in question is cashier, identified by DOT Code 211462-014, which appellant had last performed in 2004. According to the DOT, this job requires Level 3 reasoning, at least as generally performed, and in Zavalin v. Colvin back in 2015, the Ninth Circuit held that there was an apparent conflict between the demands of Level 3 reasoning and a limitation to simple routine or simple repetitive tasks. And this job of cashier was specifically mentioned in Zavalin, so there really shouldn't be any question that this job is in conflict with the demands of Level 3 reasoning. The question before the Court is whether Zavalin applies at Step 4. We believe that it does, but that inquiry has to be broken into two pieces because at Step 4, the judge's finding can be supported by the past relevant work either as generally performed or as actually performed. At least as generally performed, the DOT seems to be authoritative unless the vocational expert specifically gives testimony to explain the deviation from the DOT. That's something that Zavalin says pretty clearly, and Zavalin rests in part on SSR004P, which explicitly applies at Steps 4 and 5. So as far as actual performance, I believe Zavalin should still apply if the judge is relying on vocational testimony because if the judge is relying on vocational testimony, then that testimony has to be either consistent with the Dictionary of Occupational Titles or the deviation has to be explained. This may be overlooking the subtleties, but how hard is it to define what the job is as basically she's a grocery checker? I mean, actually performed as generally performed? I mean, we all know about grocery checkers. Right. I don't think that... Our position is that there isn't any distinction, frankly. As a cashier, she was basically a cashier, correct? Yes. Yes. And in Zavalin, they discussed the requirements of a cashier. The court held that it was a complicated job. It exceeded simple because of requirements such as reconciling the ticker tape with the cash on hand at the end of the day. It was inconsistent with the reasoning level of three is what they said. Right. Well, they said it was consistent with the reasoning level of three, but that the demands of level three reasoning exceeded the limitation to simple routine tasks. Right. It is worth noting, as opposing counsel pointed out in the briefs, that the limitation in this case is to simple decisions, which is at least a different word than simple tasks. Our position is that this is a distinction without a difference. Does it make a difference that depending on what step we're at, who has the burden of proof? It does, but the ALJ's position has to be based on substantial evidence in the record. While it is still the claimant's burden at step four, the ALJ also has a duty to develop the record. These cases are not adversarial at the administrative level. If we remand, does the checker job in the past fall out? That is to say, the time period has changed. The time period has changed not because of the change in time, but because of new regulations that the commissioner issued in June. On remand, they will only be looking back to 2011 based on the date last insured of 2016. A five-year period. A five-year period. Yes, exactly. As opposed to 15 years. So if we remand, it sounds as though all of a sudden this job is off the table. Exactly. The ALJ doesn't even look at it. It's our position that there's no point in remanding for further proceedings. If there is error, then it has to be remanded for immediate payment because there's just nothing on remand. There is no past relevant work. Well, but past relevant work is not the only question. Well, how do you mean? That is to say, the question is can you do work available in the economy, not merely whether you can do past relevant work. Right, but this claimant was age 56 at her protective filing date. She's limited to light work, so if she can't do her past work, the grids force a conclusion of disabled. But isn't it unclear with respect to, say, if it's remanded, whether she would be precluded from all work in terms of an analysis of Step 5? Well, she would be limited to a range of light work based on the RFC finding below. Right. I'm not sure if I really understand your response to Judge Fletcher's question in terms of if there's a remand, it must just be an immediate calculation of benefits when it appears that the record might reflect that the record is really unclear in terms of whether there's any analysis as to Step 5, whether with her RFC she's able to do any other work. Well, Your Honor, because she is limited to light work and she was over 55 years old at all material times for the case, the grid rules at 20 CFR Part 404, Subpart P, Appendix 2, indicate that a person of her age group limited to light work is entitled to a finding of disabled if she reaches Step 5. So even if she can still do some other light work in the country, unless it is her past relevant work, it does not count against her. Okay. So it's sort of all or nothing from your point of view? If we remand, we should just order that the payments be paid? Otherwise, we shouldn't remand at all? Well, I think you should remand. I understand that. But I guess I'm trying to follow up on your response to Judge Fletcher insisting that remand would include... It is essentially all or nothing at this point. Okay. Also, with her date last insured being 2016, it's not like she can reapply. Okay. With specific reference to this job of cashier, the Zavalin Court held that the task of reconciling cash on hand against the register tape and issuing credit memoranda to customers would not be simple or repetitive tasks. And it's our position that those also involve complex decisions. It's difficult to imagine a complex task that doesn't involve a complex decision, frankly. And so that's why we believe the position of the United States Attorney is a distinction without a difference. If there's nothing further, I'll just sit down. All right. Thank you. You have some time for rebuttal. Good morning, Your Honors. Joseph Linekamer on behalf of the Commissioner. Linekamer, I don't mean to interrupt you quickly, but I would note you're from Baltimore. I'm actually not from Baltimore. It's snowing like crazy in Baltimore. I'd like to welcome you to the good weather of Seattle. It's cold out there, but it's not snowing. I'm in Seattle. It's just our headquarters are in Baltimore. That's fine. And you don't get a pass from me. That's okay. Okay. But I know you are. So I want to start by disagreeing with my colleague's argument that simple decisions and simple tasks are a distinction without a difference. Making decisions and performing tasks are two different concepts. If you look it up in the dictionary, for example, a decision is a conclusion or resolution reached after consideration, a choice you make about something after thinking about several possibilities. A task is a piece of work that needs to be done. And when we look at the DOT description for cashier, it's focusing on tasks. It's not talking about making complex decisions. For example, it involves using a cash register, scanning things, handling coupons, bagging items, not complicated decisions. When we look at reasoning level three, there's no specific limit on decision making. It talks about common sense understanding, carrying out certain instructions. It talks about dealing with problems, but it adds that we're talking about several concrete variables. How do you reconcile this case with Zavalin? The RFCs are different. The residual functional capacities are different. Zavalin dealt with tasks, and this case deals with decisions. And I think it becomes clear. In Zavalin, this court pointed out that the residual functional capacities, so what the claimant was limited to in Zavalin was simple, repetitive tasks. I'm looking at the ALJ decision here. The claimant is limited to simple, routine, repetitive tasks. That's what the ALJ says. I don't believe so, Your Honor. I think if we turn to page 19 of the transcript, this is the current ALJ decision. Your Honor might be referring to the prior ALJ decision from 2015. That may be right. AR-48, the right location to look at when the ALJ asked the expert to assume whether the job seeker can make only simple work-related decisions with few, if any, workplace changes. That's the one I'm looking at. And I don't see a distinction between that and simple, routine, repetitive tasks that was at issue in Zavalin. Tell me again what the distinction is because you're splitting a very, very thin line here. I think what it comes down to is what my colleague referred to as, is there a difference between decisions? This claimant was limited to simple decisions, but no limitation on performing tasks or instructions versus in Zavalin where the claimant was limited to performing simple, routine tasks. And if I could just sort of add to this, when we look at the DOT description for CalSTRS, we see that the claimant was limited to simple, routine, repetitive tasks. And when we talk about a cashier, as I was saying before, it's talking about tasks. It's talking about doing things like using a cash register, handling coupons, bagging items. Let's think about this court, I think, you know, in Zavalin said that, well, a cashier might have to do more than follow simple instructions. Or those could involve multiple tasks that would be potentially inconsistent with simple, with reasoning level three or with simple, repetitive tasks. But let's think about sort of what decisions would a claimant actually, would an employee actually be making in performing those tasks? Well, if, let's say something doesn't scan. One of the tasks is scanning items. Well, what happens if something doesn't scan? You know, you could decide to look it up in the computer somehow at the cashier, or you could send somebody to go check the price in the aisle. You know, you could put everything in one bag, or you could separate bags based on whether it's, you know, cold food, delicate food items, things like that. So we're really talking about simple decisions. And I think... What about returns? Returns? That can be complex. That can be, I think that can be complex. But I think also what Gutierrez says, this court's Gutierrez decision, which we cite in our brief, is when we're talking about apparent conflict. So remember, we have to have a conflict that's obvious for the ALJ to ask the follow-up question. When we're looking at that question, Judge Fletcher, Gutierrez says, we're really looking at the essential sort of everyday functions of what a claim, of what an employee is doing at the job. And I would say returns do happen, but I wouldn't characterize that as necessarily an essential function of the work itself. You're telling me that a cashier working along, and then all of a sudden a return comes, and the cashier says, I can't do that, and calls the manager. Right. Is that person going to be employed at that job much longer if it is absolutely a routine, whenever a routine comes in? I can't do that. That may not happen very often, but I think it's an essential part of a cashier's job. We all see it. Yeah, and I mean, I think that does happen from time to time, but again, I would say it's, first off, it's not in the DOT description for this specific cashier code, as far as I recall it. I'd have to look back at the code. But again, I would say that when we're looking at sort of the routine things that a cashier does, it doesn't involve simple decisions. I don't think you're quite taking my point. Some things the cashier does all the time. Some things a cashier does from time to time. Some things a cashier does rarely, but is required to do. And I think you're asking me to say, well, the things that the cashier does, but rarely, don't count as part of the cashier's job. Is that what you're saying to me? And I think that's exactly what this court said in Gutierrez. In Gutierrez, the question was, was a reaching limitation in a cashier position. And this court said that sometimes a cashier might have to reach overhead. That was the specific limit in the RFC in that case. Sometimes cashiers have to do that, but it's not an essential part of the job. So it doesn't raise an obvious conflict that the ALJ has to follow up on. And back to this decision. I just have to say I beg to differ. If you're saying that returns can be complex and therefore they're a problem, but they're not a problem for you because it doesn't happen very often, I just disagree in terms of whether that's an essential characteristic of the job of a cashier. Okay, and again, I don't know that I would say that all returns are complicated. I don't know if that's always the case. I think we're sort of assuming that, but I don't know that I would necessarily agree with that. But I do want to make this point. When we're talking about reasoning level three and whether or not there's a conflict. Does not your response to Judge Fletcher's question then raise the issue as to whether or not the ALJ made the appropriate finding in terms of lack of substantial evidence, in terms of work as a cashier, that was as to generally performed in the national economy, correct? That's correct. Well, it seems to me that your acknowledgement as to Judge Fletcher's question places us in jeopardy from the point of view of the government and the agency. It would seem. I guess what I'm trying to give you the benefit is I don't think that's a mild concession here. I think it's a crucial concession you just made to Judge Fletcher here that I think jeopardizes your position before us, it seems. I don't believe I'm conceding that returns are either acceptable. Actually conceding or generally conceding, I guess is what it might be. Oh, the general versus the actual. Maybe I should just take a step back here. I just want to make sure we're all on the same page. A claimant has to show both that they can't perform the job as generally performed in the economy and as actually performed in the economy. So what I think I'm trying to convey here is when we're talking about general performance, what does a job typically entail? We do look to the DOT for that. That sort of is an important resource. Doesn't the DOT talk about the job of a cashier involving sometimes reconciling the accounts with the cash that's actually in the register? I guess my struggle with your argument is that you're asking us to make some fundamental assumptions about the scope of a cashiering job. But it can be very different, involving complex tasks in addition to very routine tasks. So if we look to the DOT, and I think you're right that we do look to that, I think reconciling cash accounts and doing returns as Judge Fletcher hypothesized is much more complex than just simple routine tasks. So I think that's why Zavalin was talking about level three reasoning. And here, I think that the potential complexity of the cashiering job makes your argument of what's generally accepted as a scope of a cashiering job difficult. And so your alternative argument is, well, she worked as a cashier in the past, but my problem with that is that the record doesn't really involve any details about what her scope of responsibilities are. The AOJ just stopped that confirmation that she had worked as a cashier, but didn't go into any details about what that entailed. Well, if I, and I understand Your Honor's point. I mean, I think if we look at the DOT code, technically the DOT code in Zavalin, the cashier position in Zavalin that we were talking about, it's a different cashier position in DOT. I don't see anything in this DOT code that talks about reconciling cash. As Your Honor was pointing out, some of the tasks are a little bit different between the DOT codes. I wouldn't say that there's any, I'm not asking the court to sort of make assumptions. What I would encourage the court to do is look at the DOT definition here, see that it's focusing largely on tasks, and then understand that decision-making is different than tasks. So that's my basic point. If I could for a moment, I know there was some questioning I think by Judge Fletcher and maybe Judge Bennett about if this court were to remand, do we just remand for payment of benefits? We should not do that. This would have to go back for further proceedings. And the reason is, yes, it's true, the new five-year rule under the revised regulations would apply on remand. It doesn't apply here. The claimant has withdrawn that argument, I think, as we're aware. And I think it appears also that the cashiering position would no longer be on the table because we would be outside the five years. But what complicates this case is I believe Ms. Young said this was a Title II claim only. It's not a Title II claim only, it's a Title XVI claim as well. So we're dealing with both disability insurance benefits, which do have a date last insured, but we're also dealing with supplemental security income, which the end period for that is the date of the ALJ's decision. So if this case were to go back on remand, at least for the Title XVI claim, we would be using the new ALJ decision as that point, that reflection point for five years back. So the question for the agency on remand would be, and I do say I'm over my time, but I just want to finish this. Go ahead and finish that answer. The question on remand would be, has there been any work within the past five years from the date of this new ALJ decision in the future, whenever that is, that the claimant performed? And it very well may be that the claimant hasn't done anything, any work, but we don't have that in the record. So really it would be for the agency to apply these regulations, these revised regulations in the first instance, and to make factual findings about whether there is actually past relevant work that has been performed, again, on remand. So I would request this Court to affirm the ALJ's Step 4 finding. Thank you. Sorry for being tall. I do have a few points to bring up in rebuttal, mainly, and I've been wrong before, but my notes indicate that the Title 16 was allowed in this case, and that the issue on appeal into the Federal Court was only the Title 2. As far as I know, Ms. Faulkner is on SSI benefits at this time. Also, regarding the Gutierrez case, and again, I haven't read it in the last few minutes, but if I recall correctly, the issue in Gutierrez was whether a person who was limited to occasionally overhead reaching could perform a job that required frequent reaching in general. The Court's holding was that because overhead reaching is a pretty rare requirement, a limitation to occasional would not be in conflict. This case isn't about occasional versus frequent. It's about whether the person can or cannot do complex tasks. If there's any complex tasks that they cannot do, then they're going to have a problem with that job. Respectfully, there is some evidence in the record distinguishing actual from general performance. It wasn't at the hearing for this case. It was at the hearing for the 2015 case, but it is in the record. The 2015 hearing transcript is in the record, and at CAR 103, the previous vocational expert testified that the past relevant work exceeded light exertion. So there is a distinction in the record, but that distinction would lead the ALJ to conclude that she could not do her past relevant work as actually performed. Lastly, as far as the question of whether a cashier has complex decisions to make, as I believe Gutierrez held, and I know the Court held in Lemire v. Berryhill, 865 F. 3rd, I want to say 1021. No, 1201. This Court is not deprived of its common sense. We have all gone grocery shopping and encountered cashiers, and there are certain things we know cashiers have to do. If someone's buying alcohol, they have to check ID, and they have to determine whether that ID is valid, shows that the person can buy alcohol, or is fake. If someone pays by check, they might have to check ID, they might have to deal with the check. Or if a customer comes up and says, hey, this rang up for this price, but on the shelf it said this price, that's a pretty complicated situation, and the cashier has to decide what to do about that. That's, in our position, clearly not a simple decision. If there's nothing further, we'll rest. All right. Thank you very much, Counsel, to both sides for your argument. The matter is submitted, and that concludes our argument calendar this morning. We'll be in recess until tomorrow morning.
judges: FLETCHER, NGUYEN, Bennett